UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVID BRANSCOMB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 1:20-CV-213-HAB |
| ) | |
| WAL-MART STORES EAST, LP, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

For the last thirteen years, this sentence (or something close to it) has appeared in several district court decisions from this Circuit:

> For the purposes of deciding if removal was proper, it is enough to note that Indiana law is unsettled regarding the extent that a plaintiff may bring a claim in negligence against a store manager, based on a delegation of the premise [sic] owner's duties toward invitees.

*Antonio v. Wal-Mart*, No. 1:07-CV-006-JDT-TAB, 2007 WL 2884371 at *7 (S.D. Ind. Sept. 27, 2007). Relying on this mantra, federal district courts have repeatedly allowed plaintiffs to join non-diverse big box store managers in premises liability claims thereby defeating federal diversity jurisdiction. *See*, *e.g.*, *Perry v. Higgins-Ballas*, No. 2:18-CV-79, 2018 WL 3158510 (N.D. Ind. June 27, 2018); *Pickering v. Menard, Inc.*, No. 1:18-CV-1448-JMS-DLP, 2018 WL 3126020 (S.D. Ind. June 26, 2018); *Springer v. Wal-Mart Corp. Office*, No. 3:10-CV-275-RM, 2010 WL 3275521 (N.D. Ind. Aug. 17, 2010); *Butler v. Kohl's Dept. Stores, Inc.*, No. 1:08-CV-84-LJM-JMS, 2008 WL 1836684 (S.D. Ind. Apr. 23, 2008). This jurisdiction-defeating practice has now become commonplace; this opinion represents the third time in six months that *this division* has been forced to address the issue. *See Chandler v. Kohl's Dept. Stores, Inc.*, No. 1:20-CV-85, 2020 WL 2190638

(N.D. Ind. May 6, 2020); *Gunkel v. Chrysler*, No. 1:19-CV-499-HAB-SLC, 2020 WL 820881 (N.D. Ind. Feb. 18, 2020).

On an issue as fundamental and potentially dispositive as jurisdiction, this collective federal shrug is frustrating, to say the least. First, the Court is not certain that Indiana law is unsettled. It is true that no Indiana appellate court has issued an opinion addressing the personal liability of a store manager (at least that this Court can find), but many of the liability scenarios envisioned by the sister courts strike this Court as legally tenuous. It is possible, then, that courts have surrendered jurisdiction on an improper basis.

Second, plaintiffs' use of this strategy to defeat federal jurisdiction has no apparent legitimate purpose other than to keep cases out of the federal courts. In your average slip-and-fall case, which is almost always the context in which the issue arises, naming a store manager who had no actual involvement with the accident or injury confers no non-jurisdictional benefit on the plaintiff. The corporate defendants are collectible regardless of the judgment amount, either through their corporate coffers or their insurers. Moreover, there is no imaginable legal scenario where only the individual defendant, acting in the scope of their employment, would be liable to the plaintiff while his employer skated. This maneuver appears to be pure gamesmanship, enabled solely by the lack of on-point Indiana authority.

If, indeed, Indiana authority is necessary, this Court now requests it. For the reasons set forth below, the Court concludes that this matter presents an issue of state law that is determinative of the case and on which there is no clear controlling precedent. *See* Ind. App. R. 64. Therefore, it is necessary that the determinative question in this case, and in the many others already cited, be certified to the Indiana Supreme Court.

### A. Factual and Procedural Background

The facts of this case are neither complicated nor unique. Plaintiffs David and Tammy Branscomb allege that, on April 21, 2019, David tripped and fell over a wood pallet that was laying on the ground of the Huntington, Indiana, Walmart[1] store. As a result, the Branscombs filed suit in the Huntington Circuit Court against Defendants Wal-Mart Stores East, LP, the owner of the store, and James Clark, the store manager. The allegations against the Defendants are essentially the same: both are alleged to have caused David's alleged injuries by failing to properly train employees, failing to have and/or implement proper safety policies and procedures, and failing to inspect and maintain property in a safe condition.[2] (ECF No. 3 at 2, ¶2).

Despite the presence of Clark, a non-diverse Indiana resident, Defendants removed the matter to this Court invoking diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1). Defendants recognized that Clark destroyed diversity but claimed that removal was nonetheless appropriate under the doctrine of fraudulent joinder. In support of their position, Defendants have tendered the affidavit of Clark (ECF No. 17-1). In the affidavit, Clark claims that he was not at the store on the day of the alleged accident and that he was not responsible for creating or implementing store safety policy. As a result, the Defendants claim that there is no reasonable possibility that a state court could find against Clark and that he should be dismissed from the case.

The Branscombs have now asked this Court to remand this action to the Huntington Circuit Court. (ECF No. 9). Plaintiffs deny the fraudulent joinder allegations, relying on *Antonio* and its progeny to assert that this Court must remand the case due to the "unsettled" question of Clark's

---

[1] The parties refer to the store with a hyphen; i.e., Wal-Mart. It appears, however, that the company prefers its stores to be referred to without the hyphen, i.e., Walmart, with the hyphenated form being reserved for references to the legal entity. The Court will comply with this convention. *See* Jane Wells, *Wal-Mart? Wal\*Mart?? Walmart???*, CNBC, Aug. 13, 2009, https://www.cnbc.com/id/32403443.

[2] The allegations against Clark add failing to properly hire and supervise employees, while the allegations against Walmart add failure to clear the walkway and failure to warn claims. (ECF No. 3 at 2, ¶2; at 3, ¶3).

personal liability. The Branscombs' motion is now fully briefed (ECF Nos. 18, 21) and ready for resolution.

**B.      Legal Analysis**

**1.      *Fraudulent Joinder***

A defendant may remove any civil action filed in state court over which federal district courts have original jurisdiction. 28 U.S.C. § 1441. The federal district courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). "[The] district courts may not exercise jurisdiction absent a statutory basis," *id*., and the removing party "bears the burden of establishing federal jurisdiction," *Tylka v. Gerber Prods. Co*., 211 F.3d 445, 448 (7th Cir. 2000). Here, Defendants allege that jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 which, in relevant part, provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a).

As noted above, Defendants admit that complete diversity is lacking but nonetheless removed the matter under the fraudulent joinder doctrine, which "permits a district court considering removal 'to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Schur v. L.A. Weight Loss Ctrs., Inc*., 577 F.3d 752, 763 (7th Cir. 2009) (first quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999), then citing *Cobb v. Delta Exports, Inc*., 186 F.3d 675, 677–78 (5th Cir. 1999)). The fraudulent joinder doctrine imposes a burden far more stringent than that ordinarily imposed on a removing defendant. *See Schur*, 577 F.3d at 764.

"Fraudulent," in this context, is a term of art. *Poulos v. Naas Foods, Inc*., 959 F.2d 69, 73 (7th Cir. 1992). A defendant invoking the doctrine must demonstrate that, "after resolving all

4

issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Schur*, 577 F.3d at 764. (emphasis and internal quotation omitted). The Court must look at both the facts alleged and the law governing the complaint to determine whether plaintiffs have "some chance of success" on their claims under state law. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015); *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) ("Under the fraudulent joinder doctrine . . ., an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'"). A plaintiff's motive in naming a non-diverse defendant is not relevant. *Poulos*, 959 F.2d at 73.

A removing defendant may present uncontested evidence to show that the facts of the case preclude a plaintiff's claim against a nondiverse defendant. For example, where a removing defendant provides an uncontroverted affidavit demonstrating that a nondiverse defendant had "absolutely nothing to do with" the claims raised by the plaintiff, the lack of diversity does not prevent removal. *Faucett v. Ingersoll-Rand Mining & Mach. Co*., 960 F.2d 653, 655 (7th Cir. 1992). In such circumstances, the plaintiff's claim against the nondiverse defendant fails because the undisputed evidence demonstrates that the plaintiff could not factually establish an essential element of the claim. *See id*.

Fraudulent joinder may also apply where a plaintiff's claim against the nondiverse litigant has no reasonable legal merit, such as where a plaintiff sues an entity who cannot be held liable under established state law. *See Poulos*, 959 F.2d at 73–74 (applying fraudulent joinder to disregard parent company's citizenship where plaintiff sued parent company for injury allegedly caused by subsidiary). "At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse

5

defendant?" *Id.*, 959 F.2d at 73. This "act of prediction" is similar to, but more stringent than, a federal court's duty to resolve questions of state law once diversity jurisdiction has been established. *See Comm. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018) ("Under *Erie*, our role in deciding these questions of state law is to predict how the highest courts of the respective states would answer them.") (citation omitted).

**2.     *A Decades-Long Game of Kick the Can***

As noted above, the federal apathy towards the joinder of big box store managers began with Magistrate Judge Tim Baker's Report and Recommendation[3] in *Antonio*. In *Antonio*, a three-year-old was killed when he was crushed by a falling mirror in a Walmart dressing room. The boy's parents filed suit in state court against Wal-Mart and its store manager (who was absent on the day of the accident), alleging failure to warn and failure to maintain the premises in a safe condition. The defendants removed the case to federal court despite the non-diverse manager, claiming fraudulent joinder. As here, the plaintiffs moved to remand the action. *Antonio*, 2007 WL 2884371 at *2–3.

Magistrate Baker recommended that remand be granted. As he saw it, there were at least two potential avenues by which the store manager could be held personally liable. First, he found that a store manager is an "officer of a corporation," and that officers can "be held personally liable for torts in which the officer participates, authorizes, or directs." *Id.* at *7 (citing *State Civil Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000)). Magistrate Baker concluded that he could not decide whether the manager could be held liable on this basis because

---

[3] The *Antonio* decision is nominally Judge Tinder's entry on the Report and Recommendation (*see Antonio*, 2007 WL 2884371 at *1–2), but language cited by future decisions comes entirely from Magistrate Baker's decision. (*Id.* at *2–9).

6

"it is not clearly obvious . . . that a store manager's failure to act constitutes participation, authorization, or direction." *Id*.

Second, while recognizing that Wal-Mart would owe the duty generally to ensure the safety of its invitees, Magistrate Baker noted that "duties . . . can be delegated." *Id*. (citing *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002) and *Bagley v. Insight Commc'ns Co.*, 658 N.E.2d 584, 587–88 (Ind. 1995)). Accordingly, he concluded that the manager "may be held liable if Wal-Mart gave her the responsibility and authority to ensure the safety of its premises." *Id*. The court stopped short of "conclusively determin[ing] whether the Antonios have a viable claim" against the manager, instead relying on what it saw as the unsettled nature of Indiana law to determine that remand was proper. *Id*.

The *Antonio* analysis largely formed the basis for the decisions that would follow. Both *Butler*, 2008 WL 1836684 at *2–3, and *Pickering*, 2018 WL 3126020 at *4, borrowed Magistrate Baker's discussion nearly whole cloth. *Springer*, 2010 WL 3275521 at *1, distinguished its case from *Antonio*, but reached the same conclusion.

*Perry*, supra, envisioned additional bases for manager liability beyond those set out in *Antonio*. In *Perry*, the plaintiff slipped and fell on a puddle of chicken "juice" at her local Walmart. The plaintiff sued Wal-Mart and the manager on duty in state court, alleging largely the same legal theories as the case at bar. As with the other cases, the defendants removed the case despite the non-diverse manager and the parties debated whether the doctrine of fraudulent joinder applied. *Perry*, 2018 WL 3158510 at *1.

Once again, the Court found the Indiana legal landscape too unsettled to dismiss the manager. In addition to the delegation and corporate officer theories identified in *Antonio*, *Perry* found two other avenues to liability. First, relying on the Restatement (Second) of Agency § 352

7

(1958), the court noted that an agent is generally not liable for harm to a third party unless "physical harm results from reliance upon the performance of duties by the agent, or unless the agent has taken control of land or other tangible things." *Perry*, 2018 WL 3158510 at *2 (quoting *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003). Accordingly, the court found that the manager "could be liable on the basis that Wal-Mart relied on a promise she made to maintain the safety of its store. Alternatively, [the manager] could be liable on the basis that she was in control of the store in her capacity as a manager." *Id*. (citing *Marshall v. Erie Ins. Exch.*, 923 N.E.2d 18, 25–26 (Ind. Ct. App. 2010)).

Second, the court pointed to Indiana common law principles finding liability against the individual in control of the premise at the time of the accident. *Id*. at* 3. These principles, the court reasoned, could make the manager "liable to plaintiff on a theory that she was exercising control of the property at the time plaintiff was injured." *Id*. Ultimately, the court concluded that "it is not clear whether [the manager] could be liable under Indiana law for a failure to act to prevent plaintiff's injury." *Id*. at *4.

**3.** ***The Fort Wayne Split***

*Antonio* and its progeny represented the sole viewpoint on store manager fraudulent joinder in this district until this Court's decision in *Gunkel*, supra. *Gunkel* featured the same essential facts and procedural history as the other cases in this area: a slip-and-fall, suit against a big box store and its non-diverse manager, removal under the theory of fraudulent joinder, and a motion to remand.

This Court, however, departed from its sister courts in determining that it could say, with reasonable certainty, that no claim could be asserted against the manager. The Court first rejected the negligent hiring/retention/supervision claim, noting that it can only be asserted against an

employer in Indiana. *Gunkel*, 2020 WL 820881 at *5 (citing *Frye v. Am. Painting Co.*, 642 N.E.2d 995, 998 (Ind. Ct. App. 1994)). The Court also pointed out that such claims are only applicable where the employee "steps beyond the recognized scope of his employment," and that the appropriate vehicle for an action arising out of the scope of employment is the doctrine of *respondeat superior*. *Id*. (quoting *Tindall v. Enderle*, 320 N.E.2d 7644, 767–78 (Ind. Ct. App. 1974)).

The Court further rejected the notion that a manager could be held liable under the Restatement (Second) of Agency, § 352. The Court "read the entirety of Section 352 and the sections cross-referenced therein, as well as the more recent Third Restatement. These provisions do not suggest a possible basis of liability against Melanie under the facts of this case." *Id*. Ultimately, this Court concluded that "[t]he reasonable balance of interests in this case warrants that it disregard, for jurisdictional purposes, [the manager's] citizenship, assume jurisdiction over the case, dismiss [the manager], and retain jurisdiction." *Id*.

Less than three months later another judge in this division reached the opposite conclusion. *Chandler*, supra, had all the same factual and procedural hallmarks as every other fraudulent joinder case addressed herein. In that opinion, Judge William Lee departed from *Gunkel* largely on the basis of delegation of duty. Judge Lee found, "[t]he issue of delegation of duty was perhaps the most important factor in every other case prior to *Gunkel* and warrants consideration." *Chandler*, 2020 WL 2190638 at *6. Judge Lee felt the decision in *Gunkel* "did not address what effect the defendant store's delegation of its duties would have on the plaintiff's claims against the store manager, nor did the opinion distinguish that case from *Antonio*, et al." *Id*. at *5. Judge Lee stopped short of finding that a cause of action existed, instead relying on *Antonio* to hold that "it

9

is enough to note that Indiana law is unsettled regarding the extent that a plaintiff may bring a claim in negligence against a store manager." *Id*. at *6.

**4.     *An Analysis of Potential Liability***

This Court has taken Judge Lee's critiques to heart. While the Court *did* distinguish *Antonio* and its progeny in its own mind in reaching the *Gunkel* decision, that rationale did not reach the page in the ultimate decision. In an effort to assure the Indiana Supreme Court that this matter has been thoroughly examined prior to certification, that rationale will be set forth below.

(a)     *Corporate Officer Liability*

*Antonio* seems to have assumed, without authority, that a Walmart store manager is a corporate officer of Wal-Mart. *See*, *e.g.*, *Antonio*, 2007 WL 2884371 at *7. While the Court is sure that Clark and others like him would enjoy the pay raise and benefits that come with such a promotion, it finds no reason to believe that this description of Clark's title is accurate.

This theory of liability arises from "hornbook corporate law." *County Line Park*, 738 N.E.2d at 1049. Corporate officers cannot be held liable for torts of the corporation merely because of their office, but they can be held liable for torts they participated in, authorized, or directed. *Id*. at 1050 (first citing *Hanson v. St. Luke's United Methodist Church*, 682 N.E.2d 1314, 1320 (Ind. Ct. App. 1997); then citing *Palace Bar, Inc. v. Fearnot*, 376 N.E.2d 1159, 1169 (Ind. Ct. App. 1978)). So, the theory goes, if a manager is a corporate officer, and if he participated in, authorized, or directed the tort, he could be held personally liable.

Wal-Mart is incorporated in Delaware, so this Court will look to Delaware corporate law to determine who qualifies as a corporate officer. Title 8, Section 142 of the Delaware Code addresses corporate officers. The plain language of the statute contemplates not local level employees but corporate level executives: people like presidents, vice-presidents, and secretaries.

10

*See*, 8 Del.C. § 142(a) (stating that "[o]ne of the officers shall have the duty to record the proceedings of the meetings of the stockholders and directors in a book to be kept for that purpose."); *Haft v. Dart Grp. Corp.*, 841 F.Supp. 549, 567–68 (D. Del. 1993) (discussing § 142 in the context of a corporate president)). The titles and duties of corporate officers are set forth in the corporate bylaws, *id.*, they are chosen as set forth in the bylaws, § 142(b), and vacancies are filled as set forth in the bylaws, § 142(e). Plainly, this statute does not contemplate the store manager at the Huntington, Indiana, Walmart as falling within its ambit. Accordingly, the Court has little trouble finding that no Indiana Court would treat Clark as a corporate officer of Wal-Mart.

(b)     *Delegation of Duty*

As *Chandler* notes, one of the primary bases upon which past federal decisions have imagined potential liability is the delegation of duty from the employer to the manager. This Court has no qualms with the idea, generally, that a duty can be delegated. *See*, *e.g.*, *Buckeye Ag-Center, Inc. v. Babchuk*, 533 N.E.2d 179, 180 (Ind. Ct. App. 1989) ("The general rule is that absent a provision to the contrary a party may delegate its duties under a contract."). However, this Court finds little reason to believe that an employer could delegate duties to an employee, particularly the duties to maintain a safe premises that are at issue in cases of manager-driven fraudulent joinder.

For more than a century, Indiana courts have held that an employer "cannot escape liability by delegating . . . to an agent" the duty to maintain a safe workplace. *Brazil Block Coal Co. v. Young*, 117 Ind. 520, 20 N.E. 423, 423 (1889); *see also Indiana Car Co. v. Parker*, 100 Ind. 81, 187 (1885). While these cases are not dispositive here, since David was not Wal-Mart's employee, they nonetheless frame the general proposition that premises liability duties are generally non-delegable. And although the Court can find no Indiana cases directly on-point, at least two other

11

jurisdictions have expressly held that duties owed to business invitees are non-delegable. *See Davidson v. Meticulously Clean Sweepers, LLC*, 765 S.E.2d 783, 785 (Ga. Ct. App. 2014); *Norris v. Ross Stores, Inc.*, 859 A.3d 266, 273 (Md. Ct. App. 2004) ("The duty imposed by law upon the defendant, as the owner and occupier of the premises, for the reasonable protection of its invitee, is not performed by an attempted delegation of it to a third party. It is a non-delegable duty, arising from the proprietor's control of the premises."). Given the strong protections for invitees under Indiana law, the Court believes that Indiana would follow suit. *See*, *e.g.*, *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991).

But more to the point, the concept of delegation of duty makes little sense when talking about an employer delegating to an employee. The *raison d'être* of the delegation of duty is that it permits the delegator to avoid liability. *See*, *e.g.*, *Shand, Min., Inc. v. Clay County Bd. of Com'rs*, 671 N.E.2d 477, 481 (Ind. Ct. App. 1996) ("Generally, a principal who delegates a duty to an independent contractor is not liable for the negligence of that independent contractor in performing the duty."). But that will never be the case in the employer-employee context; an employer will always be liable for the acts of an employee performed in the course and scope of employment. *Indian Trucking v. Harber*, 752 N.E.2d 168, 177 n.5 (Ind. Ct. App. 2001) (defining *respondeat superior* liability). Where the delegator remains liable despite the delegation, the duties in question are functionally non-delegable. *See Ind. Dept. of Transp. v. Howard*, 879 N.E.2d 1119, 1123 (Ind. Ct. App. 2008). So it is here.

The Court should not be heard to say that an employee could never be held liable for an injury to a customer. Where an agent or servant of an entity commits a wrongful act, "both master and servant are liable for any injury and damages caused by such negligence, *and either or both may be sued therefor at the option of the injured party*." *United Farm Bureau Mut. Ins. Co. v.*

*Blossom Chevrolet*, 668 N.E.2d 1289, 1291 (Ind. Ct. App. 1996), *disapproved of on other grounds Pelo v. Franklin College of Ind.*, 715 N.E.2d 365 (Ind. 1999), and quoting *Henry B. Steeg and Assocs. v. Rynearson*, 241 N.E.2d 888, 889 (1968) (original emphasis). This point is undisputed. But where, as here, the employee is not even present at the time of the accident, the Court cannot conclude that Indiana law permits him to be held liable under a theory that the duties of his employer have been delegated to him.

(c)     *Restatement (Second) of Agency § 352*

*Perry*, supra, concluded that liability could be premised on the Restatement (Second) of Agency § 352. *Perry*, 2018 WL 3158510 at *2. That section provides:

> An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things.

This language could support *Perry*'s conclusion. After all, an employer relies on its employees to perform their work tasks, and in this case, it is alleged that physical harm resulted when Clark failed to perform his.

Any support, however, ends when one reads the Reporter's Notes. Comment a. directly addresses *Perry*'s supposition, stating:

> An enforceable promise for the benefit of a third person may create a contractual duty to the third person (see § 342), ***but an agreement to carry out the purpose of the employer, which may be to help others, does not, without more, create a relation between the agent and the others upon which an action of tort can be brought for the harm which results from a failure of the agent to perform his duty to the principal.***

Restatement (Second) of Agency § 352, cmt. a. (emphasis added). This is precisely the situation at bar. To the extent that Clark's employment involved a duty to maintain a safe sales floor, that duty was owed to Wal-Mart. While it is incidentally of help to Wal-Mart's customers, Clark's

employment does not create an action against him for a failure to perform his duty to Wal-Mart. The Court cannot conclude, from the plain language of the Reporter's Notes, that an Indiana court would find otherwise.[4]

### 5.     *The Need for Clarification*

On the basis of the foregoing, the Court concludes, as it did in *Gunkel*, that Indiana law is clear enough to conclude that Clark owed no legal duty to the Branscombs. However, the Court is cognizant that its sister courts disagree. Indeed, there is no consensus on the matter even within the walls of this courthouse. Until the Indiana Supreme Court speaks, these sister courts will continue to find Indiana law "too unsettled" to dismiss non-diverse managers based on fraudulent joinder.

This situation has existed for more than a decade and is problematic. The jurisdiction of a court should not vary based on the presiding judge. This is particularly true where, as here, an answer exists: a store manager either owes a duty to customers to prevent slip-and-fall accidents or he does not. This Court respectfully requests that the Indiana Supreme Court provide that answer. The answer is potentially dispositive in this case and will provide a definitive answer going forward for dealing with an increasingly common jurisdictional issue.

Indiana Appellate Rule 64 states that a district court "may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling precedent." The Court finds that Plaintiff's claims fall within this Rule. The Court cannot determine whether it can retain jurisdiction over this action without first knowing whether Indiana law would impose an actionable duty on Clark. And even if a duty does exist, the Court cannot meaningfully apply it

---

[4] The Court also adopts, in its entirety, the discussion of negligent hiring/supervision/training claims contained in *Gunkel*. *Gunkel*, 2020 WL 820881 at *5

14

to the facts of this case without knowing the duty's scope. In order to resolve these issues, this court will certify the question to the Indiana Supreme Court.

The Justices of the Indiana Supreme Court may reformulate this question if they feel that course is appropriate. Nothing in this certification is intended to limit the scope of their inquiry.

**C.     Conclusion**

For the foregoing reasons, the Court hereby CERTIFIES the following question to the Indiana Supreme Court: "May a plaintiff bring a claim in negligence against a store manager, not directly involved in the plaintiff's accident, based on a delegation of the premises owner's duties toward invitees, Indiana agency law, or any other legal principle? If so, what is the scope of that duty?" Pursuant to Ind. App. R. 64(B), the Clerk is ORDERED to provide the Indiana Supreme Court with copies of: (1) this Opinion and Order; (2) the docket in this case, including the names of the parties and their counsel; (3) Plaintiffs' Complaint (ECF No. 3); (4) Defendants' Answer (ECF No. 5); and (5) the parties' briefs on the motion to remand (ECF Nos. 9, 10, 18, 21). All proceedings on Defendants' Motion to Dismiss (ECF No. 16) are STAYED pending a determination of this Court's jurisdiction.

SO ORDERED on August 5, 2020.

                                           s/ Holly A. Brady
                                           JUDGE HOLLY A. BRADY
                                           UNITED STATES DISTRICT COURT